Nott, J.,
dissenting:
It cannot be doubted at this day that the heads of the Executive Departments are something more than ministerial officers, nor that they are what the Supreme Court has termed “ executive officers.” (Decatur v. Paulding, 14 Peters’s R., 497.) It is *606 also beyond dispute that the law and policy of the United States confide to the head of an Executive Department the construction of statutes relating to the business of his Department, and that the construction of such a statute is an executive and not a ministerial act, as to which the judiciary cannot revise his judgment by mandamus nor interfere with his discretion. (Brown’s Case, 6 C. Cls. R., p. 186.) It has, moreover, been determined by the Supreme Court that a “ long stanching construction,” given to a statute by “ the Department tohose duty it was to act under it,” followed by the implied recognition of Congress, will forestall the consideration that the judiciary might give to “ the construotion of the statute were the matter res nova.” (Mrs. Alexander’s Case, 7 C. Cls. R., p. 205.)
The decision of the court in the case now before us goes, as I understand it, entirely upon the technical point that the advertisement for proposals for the mail-service from Port Townsend to Sitka did not literally and technically comply with the terms of the statute, and that the Postmaster-General erred in the construction which he and his assistants gave to the statute and to the advertisement when they awarded the contract to the claimant. But the claimant has produced a great number of advertisements from the files of the Post-Office, running- back more than thirty years, which do not differ from the one before us in form or substance, and the defendants have failed to show that one of them was ever questioned by any person, or held insufficient by the Department. I, therefore, dissent from the implied proposition that the judiciary can revise the action of the head of an Executive Department in regard to the construction of a statute largely directory in its character, the administration whereof has been confided to his discretion. I also dissent from the secondary proposition, that the advertisement was absolutely void under the statute.
The object of the statute was to invite competition, and the object of the advertisement was to inform bidders of that as to which they might compete. It described a mail-service within specified times, and under certain conditions, to a designated I>lace from either of two starting-points. In the body of the advertisement Portland was designated as the place where the service should begin ; in the second invitation, it was expressly stated that the service was “ to begin at Fort Townsend.” What would have been gained by repeating the times and conditions *607 over again, except a mass of words, I am unable to understand. It is possible that the Post-Office Department advertised for one thing and wanted another, but that has nothing to do with the certainty of the advertisement. Neither can the terms of the contractor’s proposal, nor a subsequent misunderstanding or disagreement as to the terms of the contract, affect this question. All that the statute intended the advertisement to accomplish was to invite competition for something, and that something was to be learned from its terms. If the contractor’s proposal did not conform to the Department’s construction of the advertisement; if he proposed for one thing when the Department meant another, the latter was at liberty to reject the bid. But when the contractor’s bid conformed to the terms of the advertisement, and imposed no new conditions* and the Department advisedly accepted the bid as it stood, the only resulting question is whether the advertisement sufficiently complied with the purpose of the statute, in securing competition for the thing advertised. The advertisement itself answers that question. Every person desiring to compete could learn from it the frequency of the service, the length of the route, the intermediate points of delivery — in short, all that competition could require as elements for an estimate. These innumerable advertisements of the Post-Office Department cannot be subjected to such critical construction as the one before us; and if their informalities really render contracts founded upon them absolutely void, I am afraid that the draughting of them will have to be taken out of the hands of ordinary executive officials and made the work of the Attorn ey-General himself.
As to the legal existence of a contract here, the question was carefully considered and expressly decided in Adams's Case, (1 C. Cls. R., p. 192,) wherein it was held that if a party furnishes sureties, and binds himself for the performance of his bid, if accepted, the contract becomes mutual and binding from the moment of acceptance, although a formal, written contract is to be subsequently executed.
As to the amount of damages which the claimant should recover, it is not free from doubt but that his case is ruled by the decision of the Supreme Court in the Reeside Mail Contract Case, (7 C. Cls. R., p. 89.) But upon this point it is needless to express an opinion.